DAHL and another, Appellants, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY and another, Respondents.

*October 3—October 31, 1967.*

421

For the appellants there was a brief by *Borg, McGill &
Moodie* and *Toby E. Marcovich,* all of Superior, and oral
argument by *Douglas S. Moodie.*

For the respondents there was a brief by *Hughes, Anderson, Davis, Witkin & Fredrickson* of Superior, and oral argument by *Bernard R. Fredrickson.*

HALLOWS, J. The question on appeal is whether the arrangement between the plaintiffs and their corporation Vanguard in respect to their personal property was such as to bring the property within the meaning of the "accepted at the warehouse for storage" phrase of the policy.

The trial court took the view this language of the policy required a bailment of the property and a bailment required the bailee to have full and complete possession of the property so as to exclude for the period of the bailment the possession of the owner and such possession as would make the bailee liable for his neglect and fault in the manner in which he discharges his trust in respect to the bailment. The trial court relied on *Fletcher v. Ingram* (1879), 46 Wis. 191, 50 N. W. 424, and *Zweeres v. Thibault* (1942), 112 Vt. 264, 23 Atl. 2d 529, 138 A. L. R. 1131, for the proposition that if the delivery and relinquishment of exclusive possession and control by the owner is not dependent upon the cooperation of the owner of the premises and his access thereto is not subject to the latter's control, no bailment is created but rather the relationship is one of landlord and tenant of space where the goods are kept.

We think the trial court reached the correct conclusion. As a general rule the warehouseman who offers to store goods for a price is a bailee for hire and when the goods are accepted and stored in the warehouse, the relationship of bailor and bailee is created. This follows essentially from the consensual transaction arising out of a contract expressed or implied. The essence of the transaction is the delivery of the goods to the bailee for a purpose, generally that of safekeeping or custody, and the acceptance for that purpose by the bailee. *Hale v. Milwaukee*

*Dock Co.* (1872), 29 Wis. 482; 56 Am. Jur., *Warehouses,* p. 331, secs. 21 and 22; 93 C. J. S., *Warehousemen & Safe Depositaries,* pp. 396, 397, sec. 2; 8 Am. Jur. 2d, Bailments, p. 963, sec. 57 and p. 925, sec. 20; Annot. (1942), *Storage contract as a bailment of chattels, or lease of place where chattels are stored,* 138 A. L. R. 1137. We need not determine whether a bailment must exclude all control of the owner. We can conceive of situations where a bailment might be created which by its terms would recognize some control of the subject matter of the bailment by the bailor and a related risk of safe-keeping might be outside the terms of the bailment.

The language of the policy while not expressly using the term "bailment" does require storage and acceptance by Vanguard at the warehouse for storage purposes. The policy contemplates coverage of only such property as its insured, Vanguard, assumes the safe custody of by accepting it for storage although the risk of fire is not an assumed risk of the bailment unless caused by the negligence of Vanguard. This insurance coverage is additional protection to the ordinary liability of the bailee. We think Vanguard did not accept any responsibility for storage or the property for storage within the meaning of the policy.

The warehouse building which was being purchased under a land contract by the plaintiffs but occupied by their corporation for its transfer and storage business contained a basement and three floors. The basement was used for some storage; the first floor, for loading and the storage of "in transfer" goods; the second floor contained corporation offices, some sleeping rooms and several permanent storage rooms; and the third floor contained permanent storage rooms. The plaintiffs were the sole stockholders of the corporation and were its employees and officers. While each maintained a home in Minnesota they stayed on the premises several nights per week if the weather was bad or a truck was due.

In 1965 each of the plaintiffs rented a second-floor storage room from the corporation and placed some of his personal property in the room. Each had a key to his room, as did the corporation. Each had free, unrestrained access to his rented storage room and such access was in no way restricted by any other person or by the corporation. Dahl paid the corporation $10 per month for his room and Erickson paid $5. The personal goods kept in the rooms were not itemized on any of the corporation's books but were identified only on a "locator card" which gave the owner's name, location and general description of the property. The goods were not entered into the warehouse register, no warehouse receipt was given for them, and no account was set up to record the particular use of the storage rooms by the plaintiffs. Erickson testified that his and Dahl's storage was not classified by them or the corporation as "shipment in transit" or "permanent storage" but "We just rented the room and could have whatever we wanted in the room." In addition to the personal property in the rooms, both plaintiffs had some lumber and lighting fixtures in the basement and on the third floor of the building, of which the corporation had no record.

We think the trial court was correct in finding that this evidence failed to prove that the corporation accepted the plaintiffs' property for storage and proved only that the plaintiffs rented rooms from Vanguard which undertook no contractual responsibility for safekeeping of whatever goods the plaintiffs might place therein. While each plaintiff kept property in the room he rented, this situation does not amount to storage by Vanguard for the benefit of the owner of the property. Of course, the plaintiffs intended in a layman's sense to store their property in the rooms they rented when they were not using the property but unless the intention of the plaintiffs and Vanguard was that Vanguard as a warehouseman was to be responsible for the safekeeping and custody of the

goods, it cannot be held that the goods were accepted for storage by Vanguard within the meaning of the policy. In respect to the lumber and lighting fixtures, their presence in the warehouse has less to commend it since no rent was paid. The language of the instant insurance policy does not cover property which is merely stored or kept in the building but only property accepted by the insured at the warehouse for its storage. While the plaintiffs were agents of the corporation, there is no evidence that in dealing with their property they were acting as officers other than to rent the rooms and in such a situation it might be said they were on both sides of the fence. Thereafter their actions were as owners of the property.

The plaintiffs rely on the holdings of *Luther Transfer & Storage v. Walton* (1956), 156 Tex. 492, 296 S. W. 2d 750, and *Zweeres v. Thibault, supra,* for the proposition that one may rent a room in a warehouse and still create the relationship of bailor and bailee. We do not consider these cases controlling because of the facts of the instant case. These cases are examples of renting a room for the exclusive storage of one's goods in a warehouse as part of the creation of a bailor-bailee relationship. The parties intend a bailment to be created and the bailee to be charged with safekeeping and the qualified possession of the goods kept in the rented room.

Since the evidence was not sufficient to find Vanguard accepted goods of the plaintiffs for storage, the motion to direct the verdict was properly granted. While the answers of the verdict were also changed, this was not necessary; merely setting aside the verdict is sufficient. *Shumway v. Milwaukee Athletic Club* (1945), 247 Wis. 393, 20 N. W. 2d 123.

*By the Court.*—Judgment affirmed.