**HAWKEYE LAND CO., Appellant,**

v.

**LAURENS STATE BANK, Appellee.**

No. 89–1739.

Supreme Court of Iowa.

Feb. 19, 1992.

Joe H. Harris, Cedar Rapids, for appellant.

Donald A. Beneke, Pocahontas, for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

Plaintiff, Hawkeye Land Co., as lessor of certain real estate, appeals from an ad-

verse judgment in an action seeking both damages and injunctive relief against defendant, Laurens State Bank (the bank). The theory of the action is that the bank, as successor in interest to a lessee of the property, assumed the lessee's obligation to remove certain improvements upon the termination of the lease—an obligation that it has not performed. Plaintiff contends that the action of the bank in this regard has jeopardized an attempt to sell the real estate.

The district court denied both damages and equitable relief. The court of appeals reversed and ordered that either the bank remove the improvements from plaintiff's property or suffer judgment against it for the cost of such removal. After considering the arguments of the parties, we affirm the decision of the court of appeals.

In 1953, the Chicago, Rock Island and Pacific Railroad Corporation (Rock Island) leased a piece of real estate near Laurens, Iowa, to the Phillips Petroleum Company (Phillips) for use as a bulk petroleum storage site. Phillips, or one of its successors in the lease, constructed a number of large upright petroleum storage tanks, several lateral storage tanks, a pump house building, a storage building, two underground storage tanks, and some concrete slabs on the premises. The lease agreement provided for the removal of these structures by the lessee upon termination of the lease.

In 1967, Phillips assigned its interest in the lease to Siddall Oil Company, which in turn assigned its interest to Leo Koenig in 1973. In 1985, plaintiff purchased all of the remaining right-of-way and real estate owned by Rock Island, including the land affected by this litigation. On April 15, 1987, plaintiff terminated the lease with Koenig for failure to pay rent. It demanded that Koenig remove the storage tanks and other improvements. Koenig refused, informing plaintiff that the defendant bank had succeeded to his interest in the improvements on the property and to his obligations under the lease.

Sometime prior to 1987, Koenig had obtained a loan with the bank, granting it a security interest in the leasehold improvements. In April 1987, Koenig defaulted on the loan, and the bank sought to foreclose on that security. A settlement was reached between the bank and Koenig, in which he agreed to quitclaim all of his interest in the leasehold improvements to the bank. A quitclaim deed accomplishing that result was executed and filed on September 22, 1987.

Plaintiff's attempts to sell the property were frustrated because of the presence of the unused and deteriorating storage tanks and buildings on the lot. The record indicates that the cost of removing these improvements would exceed $6000. At some point in late 1987, plaintiff received an offer from a salvage company to remove the tanks without charge. Plaintiff informed the bank of the offer and requested that it quitclaim its interests in the improvements to plaintiff. The bank refused this request and, in the process, continued to assert ownership of the leasehold improvements under the quitclaim deed from Koenig.

On April 1, 1988, plaintiff's general counsel contacted the bank and demanded removal of the storage tanks. The bank expressed an intent to relinquish its interest at this time. It indicated that a buyer for the improvements could not be located. It did not, however, comply with plaintiff's request for a bill of sale or quitclaim deed relinquishing the bank's interest in the leasehold improvements.

Late in the month of April, the bank learned of a potential buyer for the property and coaxed that party into tendering a purchase offer to plaintiff. This buyer wanted the leasehold improvements. The bank then advised plaintiff that it had changed its mind about releasing its interest in the improvements. It demanded $1500 of the proposed $3500 sale price for a release of its claims. Plaintiff was not amenable to this arrangement. While further discussions ensued, the buyer lost interest.

In denying plaintiff's request for injunctive relief and damages, the district court relied on the law of fixtures and rules governing those who hold security interests in fixtures. The court concluded that,

under Iowa Code section 554.9313(5) (1987), the bank, as holder of a security interest in fixtures, had a reasonable time within which it might elect to remove the improvements from plaintiff's premises. When that time passed, the court concluded, these improvements all became part of the real estate owned by plaintiff in fee simple absolute. The court found that the bank had no obligation to pay rent during either the "reasonable" removal time or after ownership of the improvements fully vested in plaintiff.

The district court further concluded that, although the bank had a right to remove these "fixtures," it never was under any duty to plaintiff to remove this property. The court based this absence of duty on the failure of plaintiff to show that the bank had assumed the obligation that the lease placed on Koenig to remove the improvements.

Finally, the district court found that, by the time the potential buyer appeared in late April of 1988, the reasonable time for removal of fixtures under section 554.-9313(5) had expired. From this premise, the court reasoned that no action on the bank's part could have effectively frustrated the sale.

We separately review the district court's conclusions as to injunctive relief and damages. The scope of review on appeal is governed by how the case was tried in the district court. *Bricker v. Maytag Co.*, 450 N.W.2d 839, 841 (Iowa 1990); *Gerard v. Peterson*, 448 N.W.2d 699, 701 (Iowa App. 1989). Because the action was docketed and tried in the district court as an equitable proceeding, our review is de novo. Iowa R.App.P. 4.

### I. *Injunctive Relief.*

■ The plaintiff argues that, as the court of appeals decided, the bank, as owner of the improvements, is obligated to remove same irrespective of whether it ever assumed Koenig's contractual obligations to plaintiff. It urges that ownership of these worthless assets that detract from the value of its property cannot be thrust upon it against its will. In review-

ing the authorities that bear on this issue, we agree.

■ We believe that the district court's reliance on section 554.9313(5) was misplaced. First, we view that statute as merely granting the holder of a security interest in fixtures the same right of removal as the party who placed the fixtures on the property. *See* Note, *Fixtures, Security Interests and the New Article 9,* 22 Drake L.Rev. 637, 640 (1973) ("if the debtor could remove the goods the secured party certainly should be able to remove them also"). The intent of section 554.9313(5) is to relax somewhat the rules of real property law concerning permanent attachment of fixtures to real estate. We do not believe, however, that this statute was intended to force the owner of the real estate to accept ownership of improvements which that party wishes to reject.

Our interpretation of this statute is particularly compelling where, as in the present case, the landowner has established contractually with the party or parties who placed the unwanted property on the land that it would be removed. This circumstance fits the present situation under subsection (a) of section 554.9313(5), in which the owner has "disclaimed an interest in the goods as fixtures," rather than under subsection (b), which contained the reasonable time of removal language relied on by the district court.

Our second disagreement with the district court lies in its conclusion that the bank's status vis-à-vis the unwanted improvements was as a holder of a security interest. By the time the events that are critical to this case arose, the bank had become the owner of these unwanted improvements. As such, we believe it became obligated to remove the property independent of and without regard to the terms of Koenig's lease.

We believe the bank's position is governed by the law of trespass as expressed in the following provision found in Restatement (Second) of Torts:

A trespass may be committed by the continued presence on the land of a

structure, chattel, or other thing which the actor *or his predecessor in legal interest* has placed on the land

(a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated, or

(b) pursuant to a privilege conferred on the actor irrespective of the possessor's consent, if the actor fails to remove it after the privilege has been terminated, by the accomplishment of its purpose or otherwise.

Restatement (Second) of Torts § 160 (1965) (emphasis added). Comment *e* on clause (a) of this section of the Restatement provides:

The intentional violation of such a duty of removal constitutes a continuing trespass for the entire time during which the actor is under a duty to remove the thing, and gives the possessor of the land a series of independent causes of action for trespass unless and until the actor disseises the possessor.

We have generally recognized these legal principles in trespass by chattel situations involving encroaching fences and encroaching livestock. *See Brown v. Bergman,* 204 Iowa 1006, 1009, 216 N.W. 731, 732 (1927) (fences); *Babley v. Vyse & Gatchie,* 48 Iowa 481, 483 (1878) (livestock).

Our cases recognize the propriety of granting injunctive relief as an alternative to damages in situations of continuing trespass. *Independent Sch. Dist. of Ionia v. DeWilde,* 243 Iowa 685, 693, 53 N.W.2d 256, 261 (1952); *Kamrar v. Butler,* 164 Iowa 293, 297, 145 N.W. 879, 880 (1914).

In applying the foregoing legal principles to the present case, we hold that the bank, as owner of the improvements, had a duty to remove same upon request when the leasehold of its predecessor in interest expired. Its failure to do so created a continuing trespass that was the proper subject of injunctive relief as ordered by the court of appeals.

### II. *Claim for Damages Incident to Loss of Opportunity to Sell the Property.*

■ As we have indicated, the district court denied plaintiff's claim for damages suffered as a result of the lost sale opportunity in late April of 1988. It posited its decision on the belief that by that time ownership of the improvements in question had fully vested in plaintiff, thus permitting it to sell the property irrespective of the bank's conduct. Plaintiff urges that, even if the court's theory of legal entitlement was correct, it failed to consider the actions of the bank as a slander of title that effectively caused plaintiff to lose the sale opportunity.

We believe that the district court's result on the damage issue was correct based on our conclusions concerning the bank's ownership of the improvements. As previously indicated, the prospective buyer in the transaction on which plaintiff's damage claim is based wanted the improvements left in place as part of his offer. The bank, as the owner of the improvements, did have some standing to actively participate in these negotiations. Whether or not its negotiating position was reasonable under the circumstances is a matter over which reasonable minds might differ. Plaintiff has failed to establish any basis for recovering damages from the bank as a result of this transaction.

### III. *Plaintiff's Claim for Rent.*

■ Finally, we consider plaintiff's claim that it is entitled to rent for the period of time that the bank's storage tanks and other structures have remained on the premises after the termination of Koenig's lease. The magnitude of this claim is not great, as the evidence indicates plaintiff's willingness to rent this tract for $750 a year. We believe the rent claim is without merit, however, because the claim for rent as a result of the bank's occupancy of plaintiff's property and the claim for trespass are mutually exclusive. *See* 49 Am. Jur.2d *Landlord and Tenant* § 1116 (1970).

For the reasons stated, we affirm the decision of the court of appeals. The district court's judgment is affirmed on its denial of damages. That judgment is reversed on the claim for injunctive relief.

858

The defendant, Laurens State Bank, shall act to remove the unwanted improvements from plaintiff's property at its expense within seventy days of the issuance of procedendo from this court. Upon the failure of the bank to so act within this time, plaintiff may remove the improvements and recover judgment from the bank for the expense of doing so.

DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.