The MANOR ENTERPRISES, INC., Plaintiff-Appellant,

v.

VIVID, INC., Defendant-Respondent.†

Court of Appeals

*No. 98–1709. Submitted on briefs January 12, 1999.—Decided May 20, 1999.*

(Also reported in 596 N.W.2d 828.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Frank A. Gumina, Kerry E.*

*Dwyer* and *MaryNell Regan* of *Wessels & Pautsch, P.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David C. Moore* of *Nowlan & Mouat* of Janesville.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

VERGERONT, J. The Manor Enterprises, Inc. (MEI) filed a complaint against Vivid, Inc. alleging trespass and waste as a result of Vivid's refusal to remove fifty-seven posts on MEI's property when Vivid removed the sign for which those posts were the supporting structure. MEI appeals the trial court's order granting summary judgment in Vivid's favor and dismissing the complaint. MEI contends there are disputed issues of fact on both claims, making summary judgment improper. We conclude the trial court properly dismissed the waste claim. On the trespass claim, we agree with the trial court that there are no material issues of fact. However, we conclude MEI, not Vivid, is entitled to judgment as a matter of law on the question whether Vivid is trespassing. The undisputed facts show that consent for the posts to be placed in the ground was conditioned upon their being the supporting structure for the sign, which MEI and its predecessor leased from Vivid and its predecessor. Upon Vivid's removal of the sign, it no longer had MEI's consent to leave the posts in the ground, and its refusal to remove them constituted a trespass. We therefore affirm in part, reverse in part and remand.

## BACKGROUND

The complaint alleges the following. Vivid was found to be the owner of a sign on MEI's property in a prior court action. Vivid left fifty-seven sign posts protruding from the ground after it removed the sign and refused to remove the posts despite MEI's repeated requests. The posts' existence on MEI's property constitutes trespass and diminishes the property's value. Vivid's conduct constitutes waste. Vivid's actions in refusing to remove the posts are willful, wanton and in reckless disregard of MEI's property rights.

In its answer, Vivid denies those allegations, except that it admits it refused to remove the posts in spite of being requested to do so, and affirmatively alleges that the posts were placed there at the request of MEI or its predecessor and, accordingly, Vivid is a "bailor" with respect to the posts and has no duty at law or by contract with respect to the removal of such posts.

Vivid moved for summary judgment. Accompanying its motion was the affidavit of Arthur Donaldson, an authorized agent of Vivid, who averred the following. Vivid is in the business of outdoor advertising. Twenty-five to thirty years ago it purchased another company's assets, which included a sign located on the property of a restaurant called "The Manor" and a contract with the then-owner of The Manor. The sign had been erected at the request of and for the benefit of the owner of the property. The owner made rental payments to Vivid, which maintained the sign. Over the years there were various written agreements between Vivid and the owners of The Manor concerning the rental terms for the sign. MEI eventually purchased The Manor and paid rent to Vivid through January 1995, then stopped making payments and took the position that Vivid did not own the sign. Vivid brought

386

an action for replevin and back rent against MEI. The court awarded Vivid a judgment directing the issuance of a writ of replevin for Vivid "to take possession of said sign and its supporting structures" and a money judgment of $3,661.36. Vivid collected the money judgment and, when MEI refused to pay additional rent, Vivid removed the sign, leaving the fifty-seven posts that had supported the structure. Donaldson also averred that Vivid has "never been a tenant on the property of The Manor and has never undertaken a duty by contract to remove its sign."[1]

In opposition to the motion, MEI submitted documents produced by Vivid. There were copies of two written agreements between the parties, one dated July 18, 1986, and one dated November 29, 1989, each renewing the "electric display rental agreement" for a three-year term at a specified monthly rental fee; and Donaldson's affidavit submitted in the replevin action explaining that he was able to locate only these two written agreements and, since the expiration of the later of the two, Vivid billed MEI on a month-to-month basis. There was also correspondence between the parties during 1990–92 concerning the amounts due Vivid, vandalism to the sign, and the dispute over ownership of the sign.

Vivid argued that it had no liability for either trespass or waste unless it had a duty to remove the signs, and it did not have such a duty. Vivid also argued that there could not be a trespass because there was a bail-

---

[1] To the extent this averment contains a legal conclusion on Vivid's duty, we disregard it. Affidavits in support of a summary judgment motion must contain such evidentiary facts as will be admissible in evidence, § 802.08(3), STATS., and conclusions of law will be disregarded. *See Hopper v. City of Madison*, 79 Wis. 2d 120, 130, 256 N.W.2d 139, 143 (1977).

ment. MEI responded that there was a genuine issue of material fact concerning whether there was an agreement that Vivid would remove the sign and supporting structures, relying on a letter dated December 17, 1990, from Donaldson to John Fiorello of The Manor, stating:

> We are in receipt of your note on your check #90964. Your contract includes normal maintenance and not vandalism. As I have told you in the past, it costs us more to maintain your sign that [sic] we are receiving.
> So, therefore, we would have to raise your rate substantially. Or, we can cancel the contract with you and remove the sign by Feb. 1, 1991.

MEI also argued there was no bailment, and there was a material issue of fact as to whether failure to remove the posts constituted waste.

The court concluded, absent a specific agreement to remove the posts, Vivid had no duty to do so, and there was no evidence of any such agreement. Based on Vivid's concession that it had abandoned the posts, the court decided that MEI could remove and dispose of them. The court did not address Vivid's argument that there was a bailment, or MEI's claim for waste.

## STANDARD OF REVIEW

When we review a summary judgment, we apply the same methodology as the trial court, and we consider the issues de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The remedy is appropriate in cases where there is no genuine issue of material fact and the moving party has established his or her entitlement to judgment as a matter of law. *Id.*; *Grams v. Boss*, 97 Wis. 2d

332, 339, 294 N.W.2d 473, 477 (1980). The court is to draw all reasonable inferences from the evidence in favor of the non-moving party, and may not grant summary judgment if more than one reasonable inference can be drawn from the facts. *Green Spring Farms*, 136 Wis. 2d at 317, 401 N.W.2d at 821; *Grams*, 97 Wis. 2d at 339, 294 N.W.2d at 477. Whether a particular factual inference may be drawn, whether it is reasonable and whether it is the only reasonable inference are all questions of law for this court to decide. *Groom v. Professionals Insurance Co.*, 179 Wis. 2d 241, 249, 507 N.W.2d 121, 124 (Ct. App. 1993). If the opposing party is entitled to summary judgment, the court may award summary judgment in that party's favor even if that party has not moved for summary judgment. Section 802.08(6), STATS.

## TRESPASS

On appeal, MEI renews its argument that summary judgment is not proper on the trespass claim because there is a factual dispute concerning whether Vivid had a duty to remove the posts and because the rental agreement did not create a bailment, which Vivid asserts as a defense to this trespass claim. The parties' disagreement on these two points centers on their dispute over the interpretation and application of certain provisions of, and comments to, §§ 158 and 160 of the Restatement of Torts. *See* RESTATEMENT (SECOND) OF TORTS §§ 158 and 160 (1965).

Section 158 of the Restatement, "Liability for Intentional Intrusions on Land," provides:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to

any legally protected interest of the other, if he intentionally

 (a) enters land in the possession of the other, or causes a thing or a third person to do so, or

 (b) remains on the land, or

 (c) fails to remove from the land a thing which he is under a duty to remove.

Section 160 of the Restatement, "Failure to Remove Thing Placed on Land Pursuant to License or Other Privilege," provides:

A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest has placed on the land

 (a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated, or

 (b) pursuant to a privilege conferred on the actor irrespective of the possessor's consent, if the actor fails to remove it after the privilege has been terminated, by the accomplishment of its purpose or otherwise.

Relying on § 158(c) of the Restatement, Vivid argues that it is liable for trespass only if it had an express contractual duty to remove the posts, and the trial court agreed. MEI contends, however, that an express contractual obligation for Vivid to remove the posts is not necessary, because a duty on Vivid's part to remove the supporting structure when it removed the sign was implied in the agreement that Vivid would erect a sign and supporting structure on MEI's property. Vivid's failure to remove the posts upon MEI's request is, MEI contends, a trespass under § 160(a) of the Restatement. Vivid responds that even if it did have an implied duty to remove the posts when it

■■■■■■■■■

■■■■■■

removed the sign, the exception in comment n to § 160 for bailments should be adopted and applied by this court.

No Wisconsin case has addressed these issues, but Wisconsin case law has established a framework for analyzing claims of intentional trespass. In *Prahl v. Brosamle*, 98 Wis. 2d 130, 146, 295 N.W.2d 768, 778 (Ct. App. 1980), *overruled on other grounds*, *Wilson v. Layne*, 119 S. Ct. 1692 (1999), we referred to § 158 of the Restatement as setting forth the "common law rule of liability for intentional intrusions of land," although in that case only subsec. (a) was pertinent. Under that subsection, we stated the plaintiff had to establish intentional entry and a right to possession.[2] *Id.* We held that consent to entry onto the land is a defense to an action for trespass, and consent may be given expressly or implied from the conduct of plaintiff, from the relationship of the parties, or from custom. *Id.* at 147, 295 N.W.2d at 778–79. We relied on *Baumgart v. Spierings*, 2 Wis. 2d 289, 86 N.W.2d 413 (1957), § 167 of the Restatement of Torts,[3] and comment e to § 158 of the Restatement.[4] *Id.* at 146–47, 295 N.W.2d at

---

[2] Although the plaintiff in a trespass action need establish only a right to possession of the land, and not ownership of the land, for ease of reference we will refer in our opinion to the person claiming trespass as the "landowner."

[3] RESTATEMENT (SECOND) OF TORTS § 167 (1965), provides:

Effect of Consent of Possessor
The rules stated in §§ 892–892 D as to the effect of consent to the actor's conduct apply to entry or remaining on land.

[4] RESTATEMENT (SECOND) OF TORTS § 158 cmt. e (1965), provides:

*e.* Conduct which would otherwise constitute a trespass is not a trespass if it is privileged. Such a privilege may be derived from the consent of the possessor (see §§ 167–175), or may be given by law

778–79. Although we did not expressly say so in *Prahl*, it is implicit in our decision, and in accord with the general rule, that it is the burden of a defendant asserting consent to plead and prove it. *See* PROSSER AND KEATON ON TORTS § 18 n.2, (W. Page Keeton et al. eds. 1984); 75 AM. JUR. 2D § 216 p. 164; RESTATEMENT (SECOND) OF TORTS, Chapter 8 at 309 (1965) (citing RESTATEMENT (SECOND) OF TORTS, § 10 cmt. c (1965)).

It is undisputed that MEI owns the land on which the posts are placed, MEI has asked Vivid to remove the posts, and Vivid has refused. Although Vivid denied in its answer the allegation that the posts belonged to it, we conclude that Vivid's filings, assertions and arguments since the answer have removed any dispute on this point. Donaldson's affidavit avers that the judgment entered in the replevin action Vivid initiated included an order for the issuance of a writ of replevin for Vivid "to take possession of said sign and its supporting structures." Even if that judgment created only a reasonable inference that Vivid owns the supporting structure and did not establish its ownership as conclusive, Vivid's defense that it bailed the sign and posts to MEI is dependent upon the factual premise that Vivid, rather than MEI, owns the structures.[5] (We discuss the elements of bailment in more detail below.) Vivid has never argued and is not now arguing that it is not trespassing because the posts do not belong to it. We therefore conclude that there is no dispute concerning Vivid's ownership of the posts.

Given the undisputed facts, in order to avoid summary judgment in MEI's favor, Vivid must present

because of the purpose for which the actor acts or refrains from acting (see §§ 176–211).

[5] There is no reasonable inference from the record, and neither party argues, that the posts belong to a third party.

evidence, or reasonable inferences from evidence, of MEI's consent to the posts on its property. It is undisputed that the parties' predecessors agreed that Vivid's predecessor would create a sign and maintain it on MEI's predecessor's property and the latter would make a month rental payment to the former. The only reasonable inference from this evidence is that MEI's predecessor consented to Vivid's predecessor placing the sign and supporting structures on the property. However, as we have noted, it is also undisputed that MEI requested Vivid to remove the posts and Vivid refused to do so. We therefore turn our attention to the meaning of the "duty to remove" in § 158(c) of the Restatement.

Comment f in § 158 of the Restatement of Torts speaks to duty in these general terms:

> *f.* Tort liability is never imposed upon one who has neither done an act nor failed to perform a duty. Therefore, one whose presence on the land is not caused by any act of his own or by a failure on his part to perform a duty is not a trespasser.

RESTATEMENT (SECOND) OF TORTS § 158 cmt. f (1965). However, the only comment to § 158 that refers to subsec. (c) in particular is comment n, which provides, "See §§ 160 and 161 and the Comments thereon." RESTATEMENT (SECOND) OF TORTS § 158 cmt. n (1965). Since § 161 of the Restatement (Failure to Remove Thing Tortiously Placed on Land) is not relevant to this case, we focus on § 160 to shed further light on the "duty to remove." In particular, we focus on § 160(a), since MEI did initially give its consent to the placement of the sign structures on its property. Under § 160(a), the failure to remove a thing placed upon the land with the consent of the possessor of the land is a trespass "if the

393

actor fails to remove it after the consent has been effectively terminated." RESTATEMENT (SECOND) OF TORTS § 160(a) (1965). Comment d to § 160 states:

> *d.* If a structure, chattel, or other thing is placed on land with the possessor's consent conditioned upon the actor's subsequently removing it, the termination of consent creates a duty to remove it from the land, except as stated in Comments, *i, l, m* [all inapplicable ] and *n* [bailment].

Vivid argues that "conditioned upon the actor's subsequently removing it" means that there must be an express contractual agreement to do so. Vivid has provided no authority for this interpretation, and the related comments and provisions of the Restatement, as well as the few cases we have been able to locate that apply them, do not support this view.

First, a review of comment g to § 160 suggests that the failure of an agreement to remove the structure does not prevent the possessor of the land from withdrawing consent, unless the license is irrevocable.[6] Secondly, the scope note for the subsequent chapter, "Privileged Entries on Land," explains:

> Privileges of the first class may again be divided into those which are derived (1) from a presently existing consent on the part of the possessor of the land to the actor's presence, (2) from some previ-

---

[6] RESTATEMENT (SECOND) OF TORTS § 160 cmt. g (1965), provides:

*g. Mistaken belief that license is irrevocable.* Even though the actor or his transferor has not agreed to remove the structure, chattel, or other thing from the land upon the termination of the license pursuant to which it was placed there, as where the parties act under a mistaken belief that the license is irrevocable, the termination of the license creates a situation in which the rule stated in this Section applies.

394

ous transaction between the parties or their predecessors, in the course of which the then possessor consented to a subsequent entry and so created an "irrevocable license," so called, and (3) from a previous transaction between the parties or their predecessors, under circumstances in which the actor has or acquires an interest in the land.

RESTATEMENT (SECOND) OF TORTS Chapter 8 at 308 (1965). Again, this suggests that where, as in this case, the actor has not acquired an interest in the land, only an irrevocable license can preclude the possessor from withdrawing consent. That is made more explicit in § 171 of the Restatement (to which we are referred by comment a to § 160), which addresses the termination of consent, and provides:

Subject to the privileges of reasonable egress and removal of things, the actor's privilege to enter land created by consent of the possessor is terminated by
(a) the doing of any act, or the happening of any event, of the lapse of any specified period of time by which the consent is restricted, or
(b) a revocation of the possessor's consent, of which the actor knows or has reason to know, or
(c) a transfer or other termination of the possessor's possessory interest in the land.

Third, in the few cases we were able to discover from other jurisdictions that have considered the termination of consent to the placement of things upon land possessed by another, not one requires an express contractual duty to remove the things in order to establish a trespass claim. *See, e.g., Merrill Stevens Dry Dock Co. v. G&J Inv. Corp.*, 506 So. 2d 30 (Fla. Dist. Ct. App. 1987) (trespass occurred when landowner revoked oral license permitting actor to erect a concrete slab on landowner's property; oral license did not require

removal); *Hoodenpyle v. Tacor Indus.*, 595 S.W.2d 309 (Mo. Ct. App. 1979) (trespass occurred when tenant left machines and equipment on the premises after termination of a lease that did not require removal of the tenant's property); *Hawkeye Land Co. v. Laurens State Bank*, 480 N.W.2d 854 (Iowa 1992) (upon the landowner's request, bank had a duty to remove property that its predecessor in title (tenant to landowner) had left on premises at termination of lease, and its failure to do so was a continuing trespass, even if bank did not assume tenant's obligation under written lease to remove the property); *New York State Energy Research and Dev. Auth. v. Nuclear Fuel Serv., Inc.*, 561 F. Supp. 954, 974 (W.D.N.Y. 1983) (if complaint had alleged revocation of consent to store former operator's spent fuel, owner would have had a claim for trespass; no reference to express contractual obligation to remove).

Finally, requiring an express contractual duty to remove things originally placed on the land of another with consent creates, in effect, an irrevocable license as a matter of law, without regard to the parties' intent. Vivid has presented us with no justification for such a rule, and we can perceive none.

We therefore conclude that the absence of an express agreement that Vivid, or its predecessor, must remove the supporting structure upon removal of the sign at the termination of the rental agreement does not, in itself, entitle Vivid to summary judgment on MEI's trespass claim. Rather—putting aside for a moment the issue of applicable exceptions to this rule—Vivid has a duty within the meaning of § 158(c) of the Restatement to remove the supporting structure when it removes the sign if MEI, or its predecessor, consented to the structure's placement on the property

396

only on the condition that it was supporting the sign. *See* RESTATEMENT (SECOND) OF TORTS § 171(a) (1965). We conclude that the only reasonable inference from the record is that MEI, or its predecessor, did so condition its consent to have the supporting structure placed on the property and did not grant Vivid, or its predecessor, the permanent and unconditional right to place the supporting structure on its property. Although the record is spare concerning the original agreement—understandably so since it originated between predecessors to the current parties a number of years ago—the only reasonable inference is that the placement of the supporting structure on MEI's property was solely for the purpose of supporting the sign, and MEI's predecessors consented to have the supporting structure placed on its property conditioned on that purpose, rather than unconditionally and permanently.

We now turn to Vivid's argument on bailment. Vivid contends that, even if an implied condition of the agreement were that it remove the supporting structure when it removed the sign, its failure to do so does not create a trespass because MEI was the bailee of the sign and supporting structure. Vivid relies on comment n to § 160 of the Restatement:

> *n. Bailment of chattel distinguished.* If a chattel belonging to the actor which is on land in the possession of another has been bailed to the other by the actor or his predecessor in legal interest, the actor's failure to remove the chattel from the bailee's land is not a trespass, even though at the time of the bailment it was agreed that the bailment was to be terminated and the chattel retaken by the bailor at a given time or at the bailee's request.

RESTATEMENT (SECOND) OF TORTS § 160 cmt. n (1965).

397

A bailment is created by the delivery of personal property from one person to another to be held temporarily for the benefit of the bailee, the bailor, or both; under a contract, express or implied. *Bushweiler v. Polk County Bank*, 129 Wis. 2d 357, 359, 384 N.W.2d 717, 718 (Ct. App. 1986). The possession of the personal property is temporarily transferred but the general title remains in the hands of the original owner. *Moore v. Relish*, 53 Wis. 2d 634, 639, 193 N.W.2d 691, 693 (1972). Implicit in the bailment relationship is that the general titleholder be out of possession of the chattel and the bailee be in a position to exercise all possessory rights. *Id.*

Vivid provides us with no case applying comment n; and, in the only case we have been able to discover that has discussed it, the court chose not to apply it. In *New York State Energy*, 561 F. Supp. at 970, the former operator of a waste storage center contended that its failure to remove the spent fuel was not trespass because the fuel was originally placed at the center pursuant to a bailment, and the present owner of the center had become a successor bailee. The court declined to apply the exception in comment n. It concluded that the circumstances were too far removed from the ordinary bailment situation in that there were questions about whether there was a bailment; there was no negotiated contract or stated terms for the removal or return of the fuel that could be enforced against the former operator; and the nature of the bailed property presented particular problems about its disposal. *Id.* at 972–73.

In attempting to discern the purpose of comment n, the court in *New York State Energy* referred to the

notes to that comment in the American Law Institute's Tentative Draft No. 7, which provides:

> Comment *l*. [now n.] The failure of the actor to resume possession of his chattel and remove it from the bailee's land is not a trespass on land, since the actor's duty to remove the chattel arises solely from the contract of bailment. Here, too, it may sometimes be difficult to determine whether or not there is a bailment.

RESTATEMENT OF TORTS § 1005 cmt. 1 (Tentative Draft No. 7, 1931). From this, the court inferred that the exception was based on the assumption that the bailee (the landowner) had a contractual remedy against the bailor for its failure to remove the property, and the exception should not apply when it is not apparent that the landowner has such a remedy. *New York State Energy*, 571 F. Supp. at 973.

■ Like the court in *New York State Energy*, we decline to apply the exception in this case for some of the same reasons. First, assuming that a bailment originally existed when Vivid's predecessor installed the sign and supporting structure, we are doubtful that one continued to exist after Vivid removed the sign. Vivid's discussion of bailment refers consistently to "the property," without differentiating between the sign and the posts, and without explaining how MEI's relationship to the posts without the sign meets the elements of the test for bailment. A bailment depends upon the voluntary assumption of possession and control of the bailed property. *See Dahl v. St. Paul Fire & Marine Ins. Co.*, 36 Wis. 2d 420, 423–24, 153 N.W.2d 624, 625–26 (1967); *see also* 8A AM. JUR. 2D *Bailment* § 45 (1997). We have already concluded the only reasonable inference is that MEI's predecessor agreed to the

installation of the posts as the supporting structure for the sign on the condition that the posts be removed when the sign was removed. It follows that MEI's predecessor's voluntary assumption of possession and control, assuming that occurred, was of the sign and the supporting structure together. It is not reasonable to infer that, at any point in time, MEI or its predecessor voluntarily assumed possession and control of the posts alone, or of the posts after the sign was removed. In fact, it is undisputed that MEI objected to having the posts on its property without the sign.

Second, there is no express agreement between MEI and Vivid, or their predecessors, concerning the removal of the sign and its supporting structure. Vivid appears to believe this favors application of the bailment exception, but we conclude just the opposite. The exception, as we understand it, is based on the assumption that in most bailment situations, if the bailor has an obligation to remove the bailed property,[7] there will be express contractual provisions to that effect. This will provide a contractual remedy for the bailee when the bailor refuses to remove the bailed property and the bailee no longer wants possession and control of it. The purpose of the exception is not to deprive a landowner of a remedy in trespass when there is no express contractual provision obligating the bailor to remove the property. That is the result of Vivid's position, and we reject it.[8]

---

[7] If the bailee has an obligation to return the property, then clearly no trespass claim is implicated.

[8] Our conclusion is not inconsistent with *Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 473–76, 545 N.W.2d 843, 846–47 (Ct. App. 1996), on which the dissent relies for its position that MEI has no remedy in trespass because there was a bailment. In *Madison Newspapers, Inc.*, there was a

Because there is no evidence, or reasonable infer-
ences from evidence, of consent or other defense to
MEI's trespass claim, we conclude that MEI is entitled
to summary judgment on that claim. Although there
was some discussion before the trial court on the rem-
edy MEI sought, issues concerning the proper remedies
for trespass are not before us on this appeal and we do
not address them.

## WASTE

There are three elements to common law waste: (1)
unreasonable conduct by the owner of a possessory
estate, (2) resulting in physical damage to the real
estate, and (3) a substantial diminution in the value of
the estate in which others have an interest. *Pleasure
Time, Inc. v. Kuss*, 78 Wis. 2d 373, 381, 254 N.W.2d
463, 467 (1977). MEI argues that there are factual dis-
putes concerning whether the posts protruding from
the ground substantially diminish the value of MEI's
property. This argument has no merit. There is no evi-

---

contract between the parties. In rejecting MNI's argument that,
in addition to a claim for breach of contract, it had a claim for
negligent performance of the contract, we stated that "where
the alleged tort may be seen as related to a contract between the
parties, '[i]n order for . . . a cause of action in tort to exist, a duty
must exist independently of the performance of the contract.'
Under this test, 'the existence of a contract is ignored when
determining whether [the] alleged misconduct is actionable in
tort.' " *Id.* at 473, 545 N.W.2d at 846. In this case, we are not
defining a duty based on contractual terms and thus creating a
tort remedy in addition to a contract remedy the parties already
have. Rather, we are declining to preclude a tort remedy where
there is not a contractual remedy.

dence of any sort of the value of MEI's property at any time. Construing the evidence of fifty-seven posts protruding from the ground most favorably to MEI, there is no reasonable inference from that fact alone that the posts have substantially diminished the value of MEI's property.

The claim of waste fails for a second reason. The first step in summary judgment methodology is to determine whether the complaint states a claim for relief. *See Grams*, 97 Wis. 2d at 339, 294 N.W.2d at 477. Waste can only be committed by a person with a possessory interest in the estate. *Pleasure Time, Inc.*, 78 Wis. 2d at 381, 254 N.W.2d at 467. MEI's complaint alleges that MEI owns and has the legal right of possession to the land and improvements at 2102 Freeman Parkway, Beloit, Wisconsin. The complaint does not allege that Vivid has a possessory interest in MEI's real property. The proper remedy against a person with no possessory interest in the real estate, whose conduct diminishes the value of the real estate, is in trespass, which, by definition, is committed by someone who does not have a possessory interest. *Mohr v. City of Milwaukee*, 101 Wis. 2d 670, 676–77, 305 N.W.2d 174, 177 (Ct. App. 1981), *rev'd on other grounds*, 106 Wis. 2d 80, 315 N.W.2d 504 (1982). MEI's complaint does not state a claim for relief based on common law waste.

## CONCLUSION

Vivid has asked this court to find the appeal frivolous, and to award the respondents costs and fees. We deny the motion. MEI's appeal of the summary judgment on the trespass claim was not frivolous: MEI prevailed. While appeal of the waste claim may be friv-

olous, we may not award fees under § 809.25(3)(a), STATS., unless the entire appeal is frivolous. *See Nichols v. Bennett*, 190 Wis. 2d 360, 365 n.2, 526 N.W.2d 831, 834 (Ct. App. 1994), *aff'd*, 199 Wis. 2d 268, 544 N.W.2d 428 (1996).

In summary, the trial court properly dismissed MEI's claim of waste because the complaint does not state a claim for relief against Vivid based on that legal theory. The trial court erred, however, in granting summary judgment in Vivid's favor on the trespass claim. As to that claim, there are no material facts in dispute and MEI is entitled to judgment as a matter of law that Vivid is trespassing. The appropriate relief will be determined on remand.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

ROGGENSACK, J. *(dissenting).* I conclude that the circuit court properly granted summary judgment in Vivid's favor on the trespass claim because the lease of the sign constituted a bailment; and therefore, the responsibilities of Vivid and MEI in regard to the bailed property are either controlled by the agreement in fact of the parties or by an implied contract determined by the common law of bailment. Because there was no agreement in fact that assigned the responsibility to return or reclaim the bailed property, and because the common law does not obligate Vivid to reclaim the bailed property, I would adopt comment *n* of RESTATEMENT (SECOND) OF TORTS § 160 and conclude the abandoned posts did not create a trespass on MEI's land. Accordingly, I respectfully dissent from the part of the majority opinion which addresses trespass.

A bailment is created by delivery of personal property from one person to another, to be held temporarily for the benefit of the bailee, the bailor or both, under an express or implied contract. *Bushweiler v. Polk County Bank*, 129 Wis. 2d 357, 359, 384 N.W.2d 717, 718 (Ct. App. 1986). The agreement between the bailee and bailor involves the temporary transfer of physical possession and control of the property from the bailor to the bailee. *Dahl v. St. Paul Fire & Marine Ins. Co.*, 36 Wis. 2d 420, 423–24, 153 N.W.2d 624, 625–26 (1967); *Burns v. State*, 145 Wis. 373, 380, 128 N.W. 987, 990 (1910). For example, a lease of personal property generally creates a bailment because the lessor relinquishes physical possession of the property to the lessee, while retaining legal title to the property. *Cook v. Gran-Aire, Inc.*, 182 Wis. 2d 330, 340, 513 N.W.2d 652, 656 (Ct. App. 1994). Furthermore, the bailee is not required to have complete possession of the property to the exclusion of the bailor, and under the terms of the agreement, the bailor may retain some control over the property. *Dahl*, 36 Wis. 2d at 424, 153 N.W.2d at 626.

During the term of the lease at issue here, Vivid, the bailor, relinquished possession and control of the sign, which includes the supporting structures, to MEI, the bailee, while retaining ownership[1] and limited control of the bailed property for maintenance and repairs. Because Vivid received rental payments in exchange for MEI's right to use the sign for advertising purposes, the arrangement was mutually beneficial to the par-

---

[1] On October 3, 1995, the circuit court concluded that Vivid owned the sign and issued a writ of replevin permitting Vivid to take possession of its property, the sign, which includes the supporting structures.

ties. Therefore, I conclude that the lease of Vivid's sign and supporting structures to MEI was a bailment.[2]

When the term of a bailment ends, under common law, the bailee must redeliver the bailed property to the bailor and if he fails to do so, the bailor has the right to consider the bailment continued or renewed. However, the parties may make a contract under which the bailor agrees to remove the property upon termination of the bailment. *Umentum v. Arendt*, 267 Wis. 373, 376, 66 N.W.2d 192, 194–95 (1954).

The common law, which gives no obligation to the bailor to remove the bailed property, is consistent with comment *n* of the RESTATEMENT (SECOND) OF TORTS § 160, which provides that the bailor's failure to remove bailed property when the bailment concludes is not a trespass. Additionally, even if the parties had agreed that removal was the bailor's obligation, no tort of trespass may be brought because the bailee's remedy is in contract, not in tort. *See Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 473–76, 545 N.W.2d 843, 846–47 (Ct. App. 1996) (we rejected a tort claim arising from the negligent performance of a contract because the plaintiff had a contract remedy). Either way, the bailor's refusal to remove the property is not a trespass; rather, it is the abandonment[3] of bailed property.

---

[2] Other jurisdictions have held that sign rental agreements create bailments. *Young Elec. Sign Co. v. Capps*, 492 P.2d 57, 60 (Idaho 1971); *see also Wm. G. Tannhaeuser Co., Inc. v. Holiday House, Inc.*, 1 Wis. 2d 370, 83 N.W.2d 880 (1957) (a sign case where the supreme court treats the contract as a bailment, as do the headnotes, but the question of whether a bailment was created was not squarely addressed by the court).

[3] Abandoned property is that which was intentionally and voluntarily left behind by the lawful owner. *See Oconto Elec. Co.*

Under both comment *n* of the RESTATEMENT (SECOND) OF TORTS § 160 and the common law, abandoned property which was the subject of a bailment cannot create a trespass, because its disposal is the responsibility of the bailee, unless the parties contract for a different result. *See Umentum,* 267 Wis. at 376, 66 N.W.2d at 194–95. The common law and comment *n* thereby promote the policy of encouraging the bailee, who would otherwise bear the burden for the removal of abandoned property under common law and whose land is affected by abandoned property, to contract to require the bailor to remove the bailed property, if that is the result he wants. Stated another way, the bailee has the greater incentive to create a contract which requires removal of all bailed property upon termination of the bailment, as his interests are more affected than those of the bailor by abandoned property.

There is no evidence that Vivid and MEI contracted for Vivid to remove the sign, which includes the supporting posts;[4] therefore, Vivid was not obligated to retrieve the bailed property upon the termination of the bailment. In my view, the majority opinion creates a tort claim in trespass for MEI which, in essence, gives it a contract provision MEI should have bargained for but did not. I conclude this is also contrary to the policies underlying the common law of contracts, be they bailments or some other form of contract.

---

*v. Peoples L. & M. Co.,* 165 Wis. 467, 480, 161 N.W. 789, 793 (1917).

[4] In a letter dated December 17, 1990, Vivid offered to cancel the contract and remove the sign, but the circuit court concluded that there was no evidence of acceptance of this offer, and therefore, no contract. The record supports this factual finding. *See* § 805.17(2), STATS.; *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

Therefore, I conclude that the circuit court properly granted summary judgment in Vivid's favor on the trespass issue because pursuant to common law of bailments, and consistent with comment *n* of the RESTATEMENT (SECOND) OF TORTS § 160, which I would adopt, Vivid had no obligation to remove the support posts. Without such a duty, there can be no trespass for lack of its performance, *see Madison Newspapers*, 200 Wis. 2d at 473, 545 N.W.2d at 846, and accordingly, I must respectfully dissent.