TOYOTA MOTOR CREDIT CORPORATION,
Plaintiff-Respondent,

v.

NORTH SHORE COLLISION, LLC, by Registered Agent,
Ferdinand Harold Jones, III, Defendant-Appellant.

Court of Appeals

*No. 2010AP761. Submitted on briefs November 8, 2010.
—Decided February 17, 2011.*

2011 WI App 38

(Also reported in 796 N.W.2d 832.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John E. Machulak* of *Machulak, Robertson & Sodos, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua J. Brady* of *Bass & Moglowsky, S.C.*, Milwaukee.

Before Vergeront, P.J., Lundsten and Sherman, JJ.

¶ 1. SHERMAN, J. North Shore Collision, LLC, appeals an order of summary judgment in favor of Toyota Motor Credit Corporation. The circuit court determined that Toyota was entitled to possession of a 2006 Toyota Camry being held by North Shore pursuant to a statutory lien under WIS. STAT. § 779.43(3) (2009–10).[1] The court also determined that North Shore was entitled to $1,799.35 from Toyota as a condition precedent to Toyota obtaining possession of the vehicle, an amount that included a repair deductible and fees charged by North Shore for storing the vehicle. North Shore challenges the court's determination of the amount owing to it. We conclude that the circuit court erred in its determination of the storage fees owing to North Shore and that an issue of material fact remains regarding that issue. Accordingly, we reverse the court's order and remand this case for further proceedings.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

## BACKGROUND

¶ 2. In 2009, a vehicle owned by Robert Cunning-ham and financed through Toyota was damaged in an accident. With Cunningham's permission, the vehicle was towed in August 2009 to North Shore Collision for repairs, which were paid for by Cunningham's automobile insurer less a $500 deductible.

¶ 3. A sign was posted in North Shore's waiting area and "visible within 15 feet," which stated North Shore would charge a $300 administration fee and $99.95 per day for storage on cars left at the facility after repairs had been completed. The repair work on Cunningham's vehicle was completed sometime on or about September 28, 2009, and North Shore notified Cunningham to pick his vehicle up. Approximately two weeks later, Cunningham informed North Shore that "he had financed the car, the car was no longer worth the amount . . . North Shore claimed [it] was owed, and he was just giving up on the car and walking away."

¶ 4. Ferdinand Jones, the president of North Shore, averred[2] that after Cunningham informed him that Cunningham would not be picking up the vehicle, he "started calling Toyota" regarding the vehicle. At the time, Jones was apparently unaware that on October 13, 2009, Toyota obtained a judgment of replevin against Cunningham and became the title holder of the vehicle. Jones averred,

> [i]n the first phone calls, the live people (as opposed to automated responses) I was able to speak with denied

---

[2] Jones's averments with respect to his calls to Toyota were not refuted by Toyota and are therefore deemed uncontroverted. *Wisconsin Elec. Power Co. v. California Union Ins. Co.*, 142 Wis. 2d 673, 684, 419 N.W.2d 255 (Ct. App. 1987).

that Toyota had financed this car. Finally, on October 19, 2009, I spoke with a person, who identified himself as "Manuel," who acknowledged that Toyota financed the car and who would look into the matter.

Jones averred that he also placed calls to Toyota on October 22, October 23, November 11, "and probably other days in between." Jones further averred that on November 11, he spoke with an employee of Toyota who informed him that Toyota would pick up the vehicle, but that Toyota was unwilling to pay more than the $500 deductible. According to Jones, he responded that Toyota would have to pay for storage, which he calculated to be $5,594.42 in a letter sent to Toyota on November 12.[3]

¶ 5. Toyota and North Shore were unable to come to an agreement as to the amount owed by Toyota and on December 2, 2009, Toyota filed the present replevin action against North Shore to gain possession of the vehicle. Toyota later moved for judgment on the pleadings. The circuit court received evidence outside the pleadings and therefore, with the parties' consent, treated the motion as one for summary judgment.

¶ 6. Following a hearing on Toyota's motion, the circuit court ruled that Toyota was entitled to a judgment of replevin conditioned on it paying North Shore $1,799.35. According to the court, that amount included the $500 deductible plus storage, at a daily rate of $99.95, from September 28, 2009, through October 10. The court described October 10 as the date North Shore learned it was "dealing with a different situation, hence a different owner of the car . . . because in effect

_____

[3] In its findings, the circuit court stated that Jones "finally spoke to someone on November 12th of '09 and advised them that a balance was due now of $5,594.42."

Mr. Cunningham had walked away from it . . . [and North Shore] through [its] actions, clearly demonstrate[d] that [it] viewed Toyota as the responsible party and the owner and began to contact [it]."

¶ 7. North Shore appeals.

## STANDARD OF REVIEW

■

¶ 8. "We review summary judgments de novo, applying the same methodology as the circuit court." *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Wis. Stat. § 802.08(2).

## DISCUSSION

¶ 9. The circuit court determined that Toyota is entitled to possession of the vehicle in question provided it pays North Shore $1,799.35. North Shore does not dispute the court's determination that Toyota is entitled to possession of the vehicle. Rather, it disputes the amount of storage fees the court determined it was entitled to.[4] North Shore contends that because it posted a sign stating its storage fee policy in compliance with Wis. Stat. § 779.43(3), it was entitled to storage fees from September 28, 2009, the approximate date

---

[4] For ease of discussion, we refer only to the storage fees. North Shore challenges the entire amount awarded to it by the circuit court, an amount which includes the $500 repair deductible and storage fees. However, neither North Shore nor Toyota dispute the amount awarded to North Shore for the repair deductible.

repairs were completed on the vehicle, until the removal of the vehicle from its property. Toyota, in contrast, contends the circuit court correctly limited North Shore's entitlement to storage fees from September 28 until October 10, the approximate date North Shore learned that Cunningham was not going to pick up the vehicle from North Shore's premises and that the vehicle was financed.

¶ 10. WISCONSIN STAT. § 779.43(3)[5] gives each and every "keeper of a garage" a statutory lien for the amount due for the storage of a vehicle, until the storage charges are paid. To obtain this lien, all that is required by the statute is that the keeper of the garage give "notice of the charges for storing [the vehicle] . . . on a signed service order or by posting in some conspicuous place in the garage . . . a card that is easily readable at a distance of 15 feet." *Id.* In giving a "keeper of a garage" a lien for storage costs, WIS. STAT. § 779.43(3) modified the common law rule regarding bailments. *See Bob Ryan Leasing v. Sampair*, 125 Wis. 2d 266, 268–69, 371 N.W.2d 405 (Ct. App. 1985).

¶ 11. A bailment is created by delivery of personal property from one person to another to be held temporarily for the benefit of the bailor (the person who

---

[5] WISCONSIN STAT. § 779.43(3) provides in pertinent part:

(3) Subject to sub. (4), every keeper of a garage . . . shall have a lien thereon and may retain the possession thereof for the amount due for the keep, support, storage or repair and care thereof until paid. But no garage . . . shall exercise the lien upon any automobile or boat unless the keeper gives notice of the charges for storing automobiles or boats on a signed service order or by posting in some conspicuous place in the garage . . . a card that is easily readable at a distance of 15 feet.

delivers personal property to another to be held in a bailment), the bailee (the person who receives possession or custody of property under circumstances constituting a bailment), or both, under an express or implied contract. *Manor Enters., Inc. v. Vivid, Inc.*, 228 Wis. 2d 382, 398, 596 N.W.2d 828 (Ct. App. 1999). Although possession of the property that is the subject of the bailment is temporarily transferred, title remains in the hands of the property's original owner. *Id.*

¶ 12. At common law, a bailee would acquire a lien over the bailed property only if: (1) the bailee increased the value of the bailed property or was "in a public calling where the law require[d] him to accept the bailed item"; and (2) the owner of the bailed item consented to the bailment. *Bob Ryan*, 125 Wis. 2d at 268. Wisconsin Stat. § 779.43(3) modified the common law rule in that it allows a bailee to acquire lien rights over bailed property so long as the notice requirement of that statute is met. Section 779.43(3) did not, however, modify the common law requirement that the title holder of the vehicle consent to the bailment before the garage keeper acquires lien rights. *Bob Ryan*, 125 Wis. 2d at 268–69. Thus, under § 779.43(3), a keeper of a garage may acquire lien rights over a vehicle left temporarily in its possession even though the garage keeper has not increased the value of the vehicle or was not required by law to accept possession of the vehicle if the notice requirements of the statute are met, but only if the title holder of the vehicle consented to the bailment.

¶ 13. The parties do not dispute that North Shore was a "keeper of a garage" within the meaning of Wis. Stat. § 779.43(3) and that it had posted in a "conspicuous place" a sign "easily readable at a distance of 15 feet" stating that a storage fee of $99.95 per day would be

imposed on vehicles left at North Shore after repairs had been completed by the facility. *See* § 779.43(3). Thus, the remaining question in determining North Shore's lien rights under § 779.43(3) is whether the title holder to the vehicle (first Cunningham and later Toyota) "consented" to the bailment within the meaning of *Bob Ryan*.

■

¶ 14. WISCONSIN STAT. § 779.43(3) sets forth the requirements of the establishment of a garage keeper's lien for storage fees; thus, the "consent" required by *Bob Ryan* is necessarily limited. While a party might consent expressly, for example by signing a work order, a party might also consent impliedly. For example, the owner of the vehicle might simply leave the vehicle with the garage keeper for repair or the vehicle might be towed to the garage keeper by a third party. What provides "consent" in those contexts is the owner's knowledge that the car is being left in the care of the garage keeper. Similar to other contractual situations, consent is implied from the owner's acquiescence in the garage keeper's possession of the vehicle. *See Tatera v. FMC Corp.*, 2010 WI 90, ¶ 19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 (a bailment is a contractual transaction); *Dickman v. Vollmer*, 2007 WI App 141, ¶ 19, 303 Wis. 2d 241, 736 N.W.2d 202 (consent to a contract may be implied from conduct).

¶ 15. The facts are undisputed that Cunningham knew that the vehicle in question was placed in North Shore's possession and thus consented to North Shore's bailment. At that time, Cunningham was title holder to the vehicle. The facts are also undisputed that Cunningham remained title holder to the vehicle when the repairs were completed on or around September 28,

2009, until October 13, 2009, when Toyota obtained a judgment of replevin against Cunningham, giving Toyota title to the vehicle.

¶ 16. Because Cunningham consented to the bailment of the vehicle with North Shore and because North Shore satisfied the notice requirement of Wis. Stat. § 779.43(3), North Shore had a lien on the vehicle for storage fees from September 28, 2009, until October 12, the last date on which Cunningham was title holder to the vehicle and, under the statute, North Shore had a right to "retain the possession thereof for the amount due for . . . storage . . . until paid." Section 779.43(3). On October 13, when Toyota took title to the vehicle, it acquired with the title the obligation to satisfy the lien charges incurred before that date.

¶ 17. Following October 13, 2009, for North Shore to have a lien on the vehicle under Wis. Stat. § 779.43(3) enforceable against Toyota, two criteria must have been met: North Shore must have satisfied the notice requirements of that statute; and as in *Bob Ryan*, the bailment of the vehicle must have been with Toyota's consent. In *Bob Ryan*, we declined to impute to the property's true owner the consent to bailment made by an individual who did not own the property. We similarly decline to do so here.

¶ 18. Thus, even though the bailment in this case began with the consent of the then-owner, Cunningham, we hold that Cunningham's consent was not imputed to the vehicle's subsequent owner, Toyota. Once Toyota became the owner of the vehicle, its consent was a necessary element to establish the bailment of that property.

¶ 19. If Toyota became aware that North Shore had possession of the vehicle, Toyota impliedly consented to the bailment of the vehicle with North Shore by continuing to leave the vehicle in North Shore's possession. Because the facts are not in dispute that North Shore continued to fulfill the statutory notice requirement for the imposition of storage fees under WIS. STAT. § 779.43(3) during the duration of Toyota's ownership of the vehicle, those fees would accrue from the date on which Toyota knew that the vehicle was being stored at North Shore, until the date the lien was satisfied and the car was removed from its care. However, the date on or after October 13, 2009, when Toyota learned its vehicle was being stored at North Shore cannot be determined as a matter of law from the facts before us and thus remains an issue of material fact for the circuit court.

¶ 20. In summary, North Shore had a lien on the vehicle for storage fees from September 28, 2009, until October 12, when ownership of the vehicle changed. Toyota is responsible for these fees. And, as explained above, if and when, during its ownership of the vehicle, Toyota consented—that is, Toyota learned that its vehicle was being kept at North Shore and continued to leave the property there—North Shore had another lien on the vehicle from the date of Toyota's consent until the date the lien was satisfied. Because the question of whether Toyota consented to North Shore's possession of the vehicle remains an issue of material fact, we reverse the order of summary judgment in favor of Toyota and remand this matter for further proceedings to determine if and when Toyota, by its conduct, consented to the bailment and, if so, the amount of

storage fees to which North Shore is entitled, in a manner consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.