LASZEWSKI and wife, Appellants, vs. DELZELL and another, Respondents.

*October 24—November 26, 1946.*

For the appellants there were briefs by *Fisher, Reinholdt & Peickert* of Stevens Point, and oral argument by *W. E. Fisher.*

For the respondents there was a brief by *Cashin & Dunn* of Stevens Point and *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theodore W. Brazeau*.

BARLOW, J.   The question involved is whether there is credible evidence in the record which, with the admitted facts, in any reasonable view fairly admits of inferences sufficient to support findings of causal negligence establishing liability of defendants to pay damages to the plaintiffs for the death of their minor child.

The accident happened May 16, 1944, on the farm occupied by plaintiffs.   The buildings were located east of County Trunk Highway O in Portage county, which highway extends north and south.   There was a driveway north of the residence extending east from the public highway, forming a loop in about the form of the letter "P," the stem being next to the highway, between fifty and sixty feet in length, and the interior of the loop being a grassy plot with a flower bed in the center with shrubbery on the north and south sides and a small amount of dead shrubbery on the east end.   The accident occurred about 2 o'clock in the afternoon of a bright, clear day.

Plaintiffs had two children, Barbara Ann, three and one-half years old, and Donald, a toddling child of fourteen and one-half months, who had been to Junction City with their uncle.   When the uncle returned to the farm with the children he drove the automobile into the garage, located at the northeast corner of the loop.   The children were there removed from the car and left in the yard.   There was a gasoline pump about three feet west of the garage along the edge of the loop in the driveway.   The uncle immediately went to the house, which was about one hundred feet southwest of the garage.   While he was in the house, and within a minute or so after

leaving the children, a gasoline truck driven by Edward Laszewski came into the driveway and stopped in front of the garage to unload gasoline at the oil pump. The gasoline was unloaded with buckets. The father of the children, who was a brother of the truck driver, was present while the gasoline was being unloaded, which took about six or seven minutes. While the gasoline was being unloaded the mother of the children crossed the loop in the driveway to go to the brooder house. She returned shortly, along the same route, and called to the men to look out for the children when she was about twenty or twenty-five feet from them. The children at that time were in the loop playing.

The truck driver testified that he did not remember seeing the children when he came into the driveway, but that he did see the little girl when she was with her father at the garage while the gasoline was being unloaded, although he did not remember seeing either of the children at the time he started the truck. The truck was on the loop of the driveway, facing southeast, and the gasoline pump was west of the truck. The truck driver had been into the premises with this truck during the forenoon of the same day. He had driven an oil truck for some fourteen years, and had been in the home of these plaintiffs many times and knew of the children. He was an uncle of the children.

After unloading the gasoline the truck driver got into the driver's seat of the truck from the left side. The father of the children was standing near the truck on the same side. The driver was unable to see for a space of about twenty feet on the west side of the truck, which appellants refer to as a "blind spot." He did not see the children, nor did he look for them but before starting the truck he asked the father of the children to look under the truck and see whether the dog was there. The father looked under the truck for the dog, and it not being there he so informed the truck driver. The driver

requested he look a second time, which he did, and the father again informed him that the dog was not there. Just then the truck driver saw the dog some distance away and started the truck.

The rear of the truck was equipped with dual wheels. When the truck had moved forward about ten feet the outside right rear wheel ran over and killed the fourteen-and-one-half-months-old Donald Laszewski. As the truck passed over the child the father called to the driver, who stopped the truck within ten feet. The father did not see the child either time he looked under the truck for the dog.

Appellants contend this case is governed by the case of *Hartzheim v. Smith* (1941), 238 Wis. 55, 298 N. W. 196, and cases therein cited. That was a case where a school teacher was living in a residence where there was a child three years of age, and had the use of part of the garage to the rear of the residence. She started toward the garage to get her car, and at the rear of the residence saw the mother and child. They talked a minute, and the mother then directed the child to go in the house, and went in herself. The child went along the driveway to get her doll carriage. In the meantime defendant got into her car and backed out of the garage along the driveway, watching her route of travel from the left-side door, and backed over the child at or near the sidewalk. The judgment for plaintiff was affirmed under the rule of *Patterson v. Edgerton Sand & Gravel Co.* (1938) 227 Wis. 11, 277 N. W. 636, that if a person knew or had good reason to believe that someone might get back of the truck after he took his last observation and before he started up, or if under all the circumstances he should have known, or did know, that someone might be back of it, then it was his duty to keep a close lookout, even to the point of it being necessary for him to get out of the truck and walk to the rear and find out. Appellants contend that the driver was chargeable with knowl-

edge of the traits of children of the ages of these children, and this would require increased vigilance on his part as he knew, or in the exercise of ordinary care ought to have known, that these children, or either of them, was or was likely to be in the area to be traversed by the truck when it started, the children at all times being within fifty feet of the truck and in plain view when the truck entered the premises.

Respondents contend the case of *Heikkila v. Standard Oil Co.* (1927) 193 Wis. 69, 213 N. W. 652, is controlling here. In that case a child was killed by the driver of a gasoline truck who drove into the farmyard of plaintiffs and unloaded gasoline from the rear end of the truck, which was carried in cans to the tractor. After filling the tractor the driver was directed to go along the driveway to an oil tank and fill that tank. He entered the truck from the left side, started the engine and moved forward a short distance when the left rear wheel passed over the body of plaintiffs' fourteen-months-old daughter, causing her immediate death. This court reversed the judgment of the lower court which found defendant guilty of negligence. The driver testified he did not see the child, and neither did the father see the child. The court said that under that statement of facts it was not the duty of the driver to ascertain by inspection whether or not the child might not be in a position of danger where she was, and also said there was nothing in the case to indicate that the driver had any reason to anticipate the child might be in a position of danger. There, as here, the truck driver knew that the plaintiffs had children on the farm, but it was held that he could hardly be expected to anticipate a child of this age would be around the truck without being in charge of someone.

In the case under consideration, the driver used more than ordinary care. The driveway was clear ahead. He had just left the rear of the truck where he had finished unloading gasoline, and traveled along the left side of the truck to enter it.

He was not going to back up, and he requested the father of the children to look under the truck twice to see whether all was clear. The father testified that when he looked under the truck, if the child had been near it on the other side, he would have seen him. The only part of the area west of the truck that the father could not see was that which was shut off by the front and rear wheels. It is difficult to see what more the driver could have done, unless he had walked around the truck, and even this may not have averted the result.

*By the Court.*—Judgment affirmed.