BAUMGART and wife, Respondents, vs. SPIERINGS and another, Appellants.*

*November 4—December 3, 1957.*

* Motion for rehearing denied, without costs, on February 4, 1958.

For the appellants there was a brief by *Chmiel & Wood-row,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Fulton* and *Mr. Stanley S. Chmiel.*

For the respondents there was a brief by *Van Susteren & Bollenbeck* of Appleton, and oral argument by *Urban P. Van Susteren.*

BROADFOOT, J. The defendants contend that the judgment must be reversed: First, because the child was a trespasser and there is no evidence of wilful and intentional injury; and second, because the defendant, on the undisputed evidence, fully discharged his duty as outlined under the decisions of this court even if the child were a licensee. To

determine the issues will require a brief summary of the facts as revealed by the record.

For approximately fifteen months prior to the date of the accident the plaintiffs and the defendant were owners of adjoining tracts of land. Upon the tract of land owned by the plaintiffs there was a dwelling house and a large machine shed. Plaintiffs' land was located on a county trunk highway. The portion of defendant's land with which we are concerned was located to the west of the plaintiffs' property. The defendant was a farmer. He owned what is referred to in the record as the "home farm" which was located some distance away from the tract in question which will be referred to for convenience as "farm B." So far as the record reveals the only building on defendant's farm B was a barn. Part of farm B was used for the growing of crops and part of it for pasturing some heifers. Younger heifers were kept in the barn. It was defendant's custom to do the chores on the home farm and then drive to farm B to feed and water the heifers.

In driving from the home farm to farm B the defendant approached on the county trunk highway, then turned to the west and reached his property by means of a driveway across the property of the plaintiffs that ran between the dwelling house and the machine shed. This was done with the permission of the plaintiffs. Most of the north-south boundary between the two properties was unfenced. The defendant's barn was located about 200 feet west of the Baumgart house. The boundary line was approximately 21 feet east of the barn.

In addition to their daughter, Karen, the plaintiffs had six boys, the oldest being twins aged twelve and the youngest about three years of age. The defendant knew the children by name and knew their approximate ages. The defendant

had two small children and upon occasion they rode to farm B with him. When he was going to do chores only, he had them stay in the truck. If he was to fix the fence or do some additional work they would get out and play with the Baumgart children. A family by the name of Barton lived on the second floor of the Baumgart house and the Bartons had two small children.

On June 10, 1954, the defendant drove to farm B in his Ford pickup truck with a load of silage. He drove across plaintiffs' property and backed his truck to the south so that the rear end thereof was close to a gate in the pasture fence. Defendant testified that as he drove through the Baumgart property he looked for children but saw none. After backing his truck up to the gate he went into the barn to fill the water tank and to do other chores required in the care of the heifers. He returned to the truck and again looked for children. He unloaded a portion of the silage into a feed bunker that was in the pasture on the other side of the gate. He then stepped down onto the left running board of the truck and again looked for children. He saw two children some 70 or 80 feet away. He testified that he looked on the right side and to the front as much as his vision would allow and that he did the same thing upon getting into the truck. He admitted that he was unable to see an area of about four feet in front of and to the right of the right front wheel. He did not walk around the truck to see if there were any children in that obscured area. As he started his truck forward he held the left door open and glanced back along the left side of the truck to make sure that the tail gate of the truck did not catch on the gate as it had done on one previous occasion. He drove a short distance forward, turning to the right, then backed his truck up to the east door of the barn in order to unload the balance of the silage in the barn. As he moved forward he felt his right front wheel strike some object which

he thought to be a stone or block of wood. After backing up to the barn he walked to the front of the truck and found Karen lying face down on the ground. He took her to the house, notified Mrs. Baumgart of the accident, and they took her to the hospital. Karen was dead upon arrival.

The defendant further testified that he had never seen Karen near his truck and that he had never seen her in the Baumgart yard when she was not attended by one of her parents or by some older person. Mrs. Baumgart testified that Karen had been in the vicinity of defendant's truck with her or with one of the boys.

When the questions to be submitted in the special verdict were being discussed an attorney for the defendants made some inquiry about trespass. The trial court replied that it did not think the child was a trespasser. No request was made to include a question in the special verdict inquiring as to trespass. The trial court was correct in stating that under the circumstances there was no question of trespass presented. It is true that children of tender age may be trespassers even though too young to be chargeable with contributory negligence. If a person is upon the land of another he is not a trespasser. if he is there with the consent of the owner. The record does not show any oral consent given to Karen to enter upon the defendant's land, but consent may be implied from the conduct of the owner, from the relationship of the parties, or by custom. The. owner's conduct, whether of .act or omission, may constitute consent. See Restatement, 1 Torts, p. 401, sec. 167.

The record establishes that the parties were on very friendly terms. The defendant drove across the property of the plaintiffs at will. They used the same well, which was located on defendant's property, and the Baumgart children played on the unfenced portion of farm B lying east of the barn. Their children played together upon occasion, and so

far as the record shows upon both properties. The defendant testified that he had warned the Baumgart children not to play in the barn because he did not like to see any children get hurt by the livestock. He did not testify that he ever refused them permission otherwise to go upon his premises. They came there at times when he was present. In this case consent that the Baumgart children play upon defendant's premises may be implied from their friendly relationship, because of defendant's knowledge that they were so playing upon his property, and because he never warned them to stay off his premises or ordered them to leave. From the record it must be held that Karen was not a trespasser at the time of the accident and that the defendant's duty to look for children before starting his truck was higher than that he might owe to a trespasser.

In support of their second contention the defendants rely upon some prior decisions of this court and in particular upon *Heikkila v. Standard Oil Co.* 193 Wis. 69, 213 N. W. 652, and *Laszewski v. Delzell,* 249 Wis. 491, 24 N. W. (2d) 879. From a factual standpoint those cases are like the one before us in that each involves the death of a child fourteen months of age resulting from the operation of a truck upon private property. One marked difference between the cases is that in the *Heikkila* and *Laszewski Cases* the father of the child was present and in effect directing the forward motion of the truck. It is unnecessary to review the facts in those cases except to say that they are essentially different from the facts in this case.

The plaintiffs, too, rely upon prior decisions of this court where recovery was allowed for the death or injury to children of tender years struck by a car on private property. The facts in the cases cited by the plaintiffs are not controlling in this case.

All of the cases cited have but one thing in common: Each reiterates the rule that the driver of the vehicle was bound to exercise ordinary care not to injure a child of tender years if he had any reason to anticipate that a child might be near his vehicle. If he did, it was his duty to see that the way was clear before starting the vehicle.

Upon the record before us a jury question was presented. In this case the defendant knew that there were several children accustomed to playing in the area where he was proposing to drive. That he anticipated children might be around is indicated by his testimony that he looked on several occasions to see if children were near. Having reason to anticipate the presence of the children, the jury could determine that he should have looked in the area of the blind spot before he proceeded. There is credible evidence to sustain the verdict.

*By the Court.*—Judgment affirmed.